**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1290

_____

HUDA FAKHREDDINE; PENN FACULTY FOR JUSTICE IN PALESTINE;
EVE TROUTT POWELL

v.

THE UNIVERSITY OF PENNSYLVANIA

Huda Fakhreddine; Penn Faculty for Justice in Palestine,
Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:24-cv-01034)
District Judge:  Honorable Mitchell S. Goldberg

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 11, 2025

_____

Before:  KRAUSE, PHIPPS, and FISHER, *Circuit Judges*

(Filed: January 9, 2026)

_____

OPINION*

_____

PHIPPS, *Circuit Judge*.

At a congressional hearing, two Representatives questioned a university president

about antisemitism on the university's campus.  In the course of their questioning, those

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

congressmen referenced faculty members, campus groups, and on-campus events.  After the hearing, the congressional committee requested documents from the university, which it began producing.  One of the referenced professors had already received negative publicity after the hearing, and fearful that the university's documents would exacerbate that unwanted attention and provoke harassment, she – along with another faculty member and a campus group to which they belonged – sued the university for violations of federal civil rights and claims under state law.  For relief, they sought to enjoin the university from producing documents to the committee, and they later requested damages as well.  In response to the university's motion to dismiss, the District Court determined that the plaintiffs failed to allege Article III standing, and because the claims were not otherwise plausible, it dismissed them with prejudice.  In this appeal, the professor who was mentioned at the congressional hearing and the campus group challenge that ruling.  On *de novo* review, we will modify the District Court's dismissal to be without prejudice and affirm the order dismissing the case as modified.

## BACKGROUND

The University of Pennsylvania is a private institution of higher education in Philadelphia.  It employs Huda Fakhreddine as a tenured professor of Arabic literature and Eve Troutt Powell as a tenured professor of history and Africana studies.  Both professors are members of Penn Faculty for Justice in Palestine, "a collective of faculty, students, staff, researchers, and graduate employees at the University of Pennsylvania who support Palestinian human rights and liberation from Israeli occupation."  Am. Compl. ¶ 11 (SA56).  In September 2023, Fakhreddine co-organized the Palestine Writes literature festival at Penn.

2

Shortly after that on-campus event, on October 7, 2023, Hamas, which has been described as a "militant Palestinian nationalist and Islamist movement . . . dedicated to the establishment of an independent Islamic state in historical Palestine,"[1] attacked Israel. According to the Israeli Foreign Ministry, that attack killed approximately 1,200 people.[2] The next morning, Fakhreddine tweeted in Arabic, "while we were asleep, Palestine invented a new way of life." *Id.* at ¶ 19 (SA58).

On October 16, 2023, there was an anti-Israel protest on Penn's campus, and Fakhreddine was one of the speakers. In her remarks, she said, "Israel is the epitome of antisemitism . . . it desecrates the memory of the Holocaust victims" and "humiliates every Jewish person." *Id.* (SA58). Another speaker at the rally opined that Jews should "go back to Moscow, Brooklyn, Gstaad, or f***ing Berlin where [they] came from," and Fakhreddine applauded. *Id.* (SA58).

These developments caught the attention of the United States House of Representatives Committee on Education and the Workforce. In response to a request from the Committee, Penn's president, along with the presidents of two other universities, voluntarily testified at a hearing on December 5, 2023.

In the course of that hearing, which was broadcast on national television and streamed online, two Committee members mentioned Fakhreddine. Representative Joe Wilson of South Carolina rhetorically inquired:

> Has any action been taken to address Professor Fakhreddine and Professor Ahmad Almallah's support of this inciteful and intimidating speech? How

---

[1] *Hamas*, Encyclopedia Britannica (Dec. 14, 2025), https://www.britannica.com/topic/Hamas.

[2] Lauren Frayer, *Israel revises down its death toll from the Oct. 7 Hamas attacks to about 1,200*, NPR, Nov. 11, 2023, https://www.npr.org/2023/11/11/1212458974/israel-revises-death-toll-hamas-attacks-oct-7 [https://perma.cc/4BD8-XVL4] ("In a text message to journalists on Friday, a spokesperson from Israel's Foreign Ministry said 'around 1,200' is now what he called 'the official number of people' killed by Hamas militants on Oct. 7.").

are Jewish students in Fakhreddine's[ ]classes supposed to receive fair treatment when she endorses hatred?

*Holding Campus Leaders Accountable and Confronting Antisemitism: Hearing Before the H. Comm. on Educ. and the Workforce*, 118th Cong. 46 (2024) (statement of Joe Wilson, Member, H. Comm. on Educ. and the Workforce).  And Representative Jim Banks of Indiana asked Penn's president directly:

> How about Huda Fakhreddine, who romanticized the murder of over 1,000 Israeli Jews as "Palestine inventing a new way of life," and clapped as a speaker said Jews should go back to Berlin and Moscow.  Why does that professor still have a job at your university?

*Id.* at 70–71 (statement of Jim Banks, Member, H. Comm. on Educ. and the Workforce).

After the hearing, Penn's president resigned, and the Committee continued its inquiry into Penn through a letter dated January 24, 2024.  That letter, which was not sent in connection with a subpoena, requested twenty-five categories of documents from Penn, primarily related to antisemitic incidents on campus, disciplinary measures taken by the university in response to discrimination, and sources of funding for certain university programs, including the Palestine Writes literature festival.  None of those document requests specifically mentioned Fakhreddine, Troutt Powell, or Penn Faculty for Justice in Palestine.  But in providing background for the Committee's motivation for those requests, the letter mentioned Fakhreddine three times:

> Multiple Penn faculty made antisemitic remarks and statements of support for Hamas in the aftermath of the October 7, 2023, terrorist attack, including the following:
>
> > Associate Professor of Arabic Literature Huda Fakhreddine publicly celebrated the attack on the morning of October 7, tweeting in Arabic that "while we were asleep, Palestine invented a new way of life."  At an October 16, 2023, anti-Israel protest on Penn's campus, Fakhreddine said, "Israel is the epitome of antisemitism . . . it desecrates the memory of the Holocaust victims.  It humiliates every Jewish person."  Fakhreddine also applauded a speaker's statement that Jews should "go back to Moscow, Brooklyn, Gstaad, or f***ing Berlin where you came from."

Letter from Virginia Foxx, Chairwoman, H. Comm. on Educ. and the Workforce, to Ramanan Raghavendran, Chairman, Board of Trustees, University of Pennsylvania, and Dr. Larry Jameson, Interim President, University of Pennsylvania 6–7 (Jan. 24, 2024) (SA34–35) (footnotes omitted).  In voluntary response to the letter, Penn began producing documents to the Committee.

On March 9, 2024, Fakhreddine, Troutt Powell, and the Penn Faculty for Justice in Palestine filed a four-count complaint against Penn in the District Court to prevent the release of documents about them to the Committee.  Although Penn is a private university, the first two counts in that complaint were for constitutional violations on the theory that "Penn, by cooperating with the Committee, is merging with, in effect becoming the tool and instrumentality used by a government actor."  Compl. ¶ 130 (SA26).  Specifically, Count One alleged that Penn violated the First Amendment by retaliating against the plaintiffs for their speech and for discriminating against them based on their viewpoints. Count Two alleged violations of the Fourteenth Amendment by releasing private information.  And despite the only identified basis for subject-matter jurisdiction in the complaint being federal-question jurisdiction, *see* 28 U.S.C. § 1331, the other two counts were for violations of Pennsylvania law.  Count Three alleged a violation of the right to privacy under the Pennsylvania Constitution.  Count Four alleged breach of contract for releasing information in violation of promises that Penn made.

In early April, the plaintiffs moved for a preliminary injunction to prevent Penn from further responding to the Committee's January 24 letter.  Penn opposed that motion and moved to dismiss on several grounds: that plaintiffs lacked Article III standing; that Penn was not a governmental or state actor subject to suit under the First and Fourteenth Amendments; and that the complaint did not state plausible claims.  The District Court

denied the plaintiffs' motion for a preliminary injunction and dismissed the complaint without prejudice for a lack of Article III standing. *Fakhreddine v. Univ. of Pa.*, 2024 WL 3106186, at \*4 (E.D. Pa. June 24, 2024).

On July 8, 2024, the plaintiffs amended their complaint. That pleading added a request for damages and also included a fifth count for conspiracy to violate civil rights, *see* 42 U.S.C. § 1985(3).

In August 2024, before Penn responded to that amended complaint, the Committee requested documents from Penn directly about Fakhreddine. It sought her resume and curriculum vitae; syllabi from her courses from the Fall 2022 Semester until present; course-wide communications for her courses from the Fall 2023 Semester until present; and communications that she had since August 1, 2023, relating to Faculty for Justice in Palestine, the Palestine Writes literature festival, or the Gaza Solidarity Encampment. Penn alerted Fakhreddine to this request and notified her that it would produce only her curriculum vitae and syllabi from her courses since the Fall 2022 Semester.

On August 22, 2024, Fakhreddine's counsel sent a letter to the District Court recounting those developments. That evening, the District Court held an emergency conference call with counsel. During that transcribed call, the District Court construed the letter from Fakhreddine's counsel as a motion for emergency injunctive relief and denied that motion.

On September 30, 2024, Penn moved to dismiss the amended complaint. It again argued that the plaintiffs did not have Article III standing, renewed its other prior arguments in favor of dismissal, and asserted that the amended complaint did not state a § 1985(3) conspiracy claim. While the briefing on that motion was underway, on October 31, 2024, the House Committee published a report on antisemitism on college

campuses; that report did not mention Fakhreddine, Troutt Powell, or Faculty for Justice in Palestine.[3]

After completion of the briefing and oral argument, the District Court, on January 30, 2025, resolved Penn's motion to dismiss by dismissing the case with prejudice. *Fakhreddine v. Univ. of Pa.*, 2025 WL 345089, at *8 (E.D. Pa. Jan. 30, 2025). It concluded that the plaintiffs lacked Article III standing because "they did not 'allege[] what information Penn will disclose or how it will harm them.'" *Id.* at *3 (alteration in original) (quoting *Fakhreddine*, 2024 WL 3106186, at *3). The District Court then determined that further amendment would be futile because the plaintiffs could not state a claim for violations of their federal and state constitutional rights, breach of contract, and § 1985(3), and it dismissed the amended complaint with prejudice. *Id.* at *8.

Through a timely notice of appeal, two of the plaintiffs, Fakhreddine and Faculty for Justice in Palestine, invoked the appellate jurisdiction of this Court to challenge that final decision. *See* 28 U.S.C. § 1291.

## DISCUSSION

At the motion-to-dismiss stage, Fakhreddine and Faculty for Justice in Palestine cannot establish Article III standing for their claims premised on federal constitutional or statutory rights without plausibly alleging an injury-in-fact. *See Carney v. Adams*, 592 U.S. 53, 55, 58–59 (2020) (applying the modern tripartite test for Article III standing to a federal constitutional claim); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–43 (2016) (applying the modern tripartite test for Article III standing to a federal statutory claim);

---

[3] *See* U.S. House of Representatives, Committee on Education and the Workforce, *Republican Staff Report: Antisemitism on College Campuses Exposed* (Oct. 31, 2024), https://edworkforce.house.gov/uploadedfiles/10.30.24_committee_on_education_and_the _workforce_republican_staff_report_-_antisemitism_on_college_campuses_exposed.pdf [https://perma.cc/KA7A-65Z3].

*Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (requiring plausible allegations of injury-in-fact at the pleading stage). To meet that requirement, they must plausibly allege "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see Lutter*, 86 F.4th at 124. A claim premised on the dissemination of information cannot meet that standard unless the information disseminated concerns the plaintiff in some way. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 439 (2021) (holding that persons whose information was not disseminated lacked an injury-in-fact). And here, the operative pleading, the amended complaint dated July 8, 2024, which was filed before the Committee's August 2024 requests for information specifically related to Fakhreddine, contains no allegations that the information Penn provided to the Committee mentioned or concerned Fakhreddine or Faculty for Justice in Palestine.[4] At most, the pleading alleges that responsive documents "might mention" Fakhreddine and that it is "impossible . . . to know . . . what Penn has produced." Am. Compl. ¶¶ 29, 41 (SA60, 62). But Article III standing cannot be premised on speculation. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025). Without providing non-speculative allegations in their amended complaint, neither Fakhreddine nor Faculty for Justice in Palestine met their burden of establishing Article III standing. *See TransUnion*, 594 U.S. at 439. Accordingly, those claims were correctly subject to dismissal.

As to the two claims under state law – for violations of the Pennsylvania Constitution and for breach of contract – the amended complaint fails to identify a basis

---

[4] Although the Federal Rules of Civil Procedure allow parties to supplement their pleadings to account for "any transaction, occurrence, or event that happened after the date of the pleading," Fakhreddine did not avail herself of that opportunity with respect to the Committee's August 2024 requests or Penn's response to those requests. Fed. R Civ. P. 15(d). *See generally Lutter*, 86 F.4th at 124–26 (explaining the different consequences for Article III standing resulting from amendment versus supplementation of pleadings).

for the District Court's subject-matter jurisdiction. *See generally* Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."). And that defect is not curable because even if the amended complaint alleged supplemental jurisdiction, *see* 28 U.S.C. § 1367(a), that would not be grounds for exercising jurisdiction over those claims because the federal claims were dismissed. *See Talley v. Clark*, 111 F.4th 255, 266 n.6 (3d Cir. 2024) (explaining that when a district court "dismisses the federal claims prior to trial . . . it '*must* decline' to exercise jurisdiction over the state law claims 'unless considerations of judicial economy, convenience, and fairness' justify retaining that jurisdiction" (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000))); *see also* 28 U.S.C. § 1367(c). Thus, the District Court lacked jurisdiction over those claims.

Because the dismissals were on justiciable and jurisdictional grounds, however, they should have been without prejudice. *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023). Therefore, we will modify the order of dismissal so that it is without prejudice and affirm such an order. *See Cook v. GameStop, Inc.*, 148 F.4th 153, 163 (3d Cir. 2025).

## CONCLUSION

For the foregoing reasons, the District Court's order will be modified to dismiss the amended complaint without prejudice and affirmed as modified.